# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

## FIRST DISTRICT—MARCH TERM, 1900.

### Arthur J. Cooke v. Engelbert Peter and Catherine Peter.

1. HUSBAND AND WIFE—*When a Husband May Prefer His Wife as a Creditor.*—A debtor in failing circumstances may prefer his wife as a creditor if there is a *bona fide* debt and the conveyance is in good faith.

2. MARRIED WOMEN—*In Courts of Equity.*—A court of equity and of justice will never visit a penalty upon a woman because she is loyal and true to a dissipated husband.

Creditor's Bill.—Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Affirmed. Opinion filed January 15, 1901.

H. G. COLSON, attorney for appellant.

MANN & MILLER, attorneys for appellees.

MR. JUSTICE HORTON delivered the opinion of the court.

July 31, 1889, the appellant recovered a judgment against the appellee Englebert Peter, for the sum of $736.12; November 3, 1897, that judgment was revived by *scire facias.* Execution was issued thereon November 4, 1897, which was afterward returned no part satisfied. At the time of her marriage to Engelbert the appellee Catherine was a widow. She received from the estate of her former husband $1,600,

which she afterward loaned to appellee Engelbert and which he used in his bakery and restaurant business. He continued in that business until July 27, 1889. At that date he had four such places of business in Chicago. The one located at 181 North Clark street he that day sold and conveyed ·by bill of sale to his wife, the appellee Catherine, for the stated consideration of $3,000. .The other three places of business were closed out under executions other than that of appellant.

This suit was commenced February 25, 1898, by creditor's bill, filed by appellant, based upon said judgment. Mrs. Peter conducted said business from the time of such sale to her up to the time the bill in this case was filed, and has accumulated property claimed by appellant to be of the value of about $18,000. The theory of the bill is that said sale was fraudulent, " a cover and sham," and that the property held by Mrs. Peter in equity belongs to Mr. Peter and should be subjected to the lien of appellant's judgment. The appellees filed their several answers denying the material allegations of said ·bill. The cause was referred to a master in chancery to take testimony and report the same to the court with his conclusions. The master reported that appellant is entitled to the relief sought by his bill. To that report exceptions were sustained in the court below and a decree was there entered dismissing the bill for want of equity. To reverse that decree this case is brought to this court.

At the time of the sale to the appellee Catherine, she held the promissory note of her husband for the sum of $3,250, which was destroyed. Catherine testified that said note was destroyed for the reason that she supposed and understood that it was paid by the sale of the bakery and restaurant to her. From the time appellee Engelbert went into that business appellee Catherine assisted in the business and received therefor the proceeds of the sale of empty barrels and sacks. It is contended by appellant that the appellee Catherine was not entitled to receive from her husband and hold as against appellant compensation for

her services in the business of her husband. That contention as a proposition of law is, under most circumstances, correct. But it does not here appear that the money thus received formed the consideration for said note. The $1,600 loaned by Catherine to her husband, with interest thereon, from some time in the year 1873, when it was loaned, to 1889, at the rate then allowed in this State by special contract, would amount to considerably more than the amount of said note, and besides, she borrowed money and secured the payment thereof by chattel mortgage upon the bakery and restaurant she had just purchased from her husband, and with the money thus borrowed she paid a debt of $1,000 owing by him. It thus appears that she received but $2,000 for the $3,250 note. That is but little more than the principal of the amount loaned more than fifteen years prior.

Very soon after her purchase of the bakery and restaurant Mrs. Peter had the sign changed and has ever since continued in the business, she during all that time being in charge and control. By the record in this case we are impressed with the conviction that the appellee Engelbert became addicted to the habit of hard drinking, and that his dissipation, perhaps coupled with the fact that he had unwisely undertaken to conduct four different business places, was the cause of his failure. It does not follow from the fact that Mr. Peter assisted in the business conducted by his wife after her purchase that the sale to her was only a cover and was fraudulent as to his creditors.

A debtor in failing circumstances may prefer his wife as a creditor if there is a *bona fide* debt and the conveyance is in good faith. But, as contended by counsel for appellant, the proof should be clear and satisfactory. (Schuberth v. Schille, 177 Ill. 346, 349.) These necessary requisities are fully sustained by the testimony in the case at bar. The sale being valid and *bona fide* and the business having since that time been conducted by the appellee Catherine in fact and in her own name, the profits arising from such business are not subject to the debts of her husband.

At the time of the sale of the bakery to Mrs. Peter, her husband was the owner of five suburban lots. He was at the same time indebted to one Banholzer in the sum of about $200. The testimony as to the value of those lots at that time is somewhat indefinite but it seems that they were probably worth not far from $3,000. Upon those lots there was a mortgage to a building and loan association. Mr. Peter conveyed the lots subject to mortgage to Banholzer in satisfaction of his claim. There was payable to the building and loan association on account of said mortgage $10.50 per week. Banholzer made a number of these weekly payments, when he discovered that the amount due upon the mortgage was about $2,800, which was several hundred dollars more than he understood it to be when he received a conveyance of the lots. He was not willing to continue to make the weekly payments and told Mrs. Peter in effect that he would deed the lots to her if she would pay him the amount the lots cost him, *i. e.*, the amount owing to him from Mr. Peter in payment of which he had accepted the conveyance of the lots and the amount he had paid the building and loan association. This Mrs. Peter undertook to do by making weekly payments to him of $10 each, besides making the payments on the mortgage. She continued making payments on account of these lots for nearly five years, and March 8, 1894, Banholzer and wife conveyed the lots to Mrs. Peter.

There is no testimony tending to show that the sale of his equity in the lots by Mr. Peter to Banholzer was not *bona fide* and valid. Neither is there any testimony tending to show that Mr. Peter ever paid anything on account of the mortgage upon said lots after he conveyed his equity therein or on account of the purchase of said lots by Mrs. Peter from Banholzer. It does not follow from the fact that the lots are now worth more than they cost Mrs. Peter that there was any fraud in their purchase. She has sold three of them and taking the amount of that sale as the basis, it may be doubted whether the advance in value is in excess of the amount she paid for them and the carrying charges and interest.

Upon a careful consideration of all the testimony we are fully satisfied that the sale of the bakery and restaurant was *bona fide*, for a good and sufficient consideration and without fraud, and that the purchase of the lots from Banholzer and paying off the mortgage thereon were likewise without fraud. It appears that Mrs. Peter has by economy and careful attention to business accumulated considerable property. She has employed her husband and paid him a fixed weekly compensation. She has carefully preserved the fruits of her labor and what she received from the estate of her former husband.

A court of equity and of justice will never visit a penalty upon a woman because she is loyal and true to even a dissipated husband.

The decree of the Superior Court is affirmed.